## Case No. 4,256.

### EASTMAN v. HINCKEL.

[5 Ban. & A. 1.] [1]

Circuit Court, E. D. Pennsylvania. Dec., 1879.

Francis D. Pastorius, for complainant.

H. W. Gimber and Thos. Greenbank, for defendants.

BUTLER, District Judge. Letters-patent No. 118,440, were issued to Robert Eastman, August 29th, 1871, for an "improvement in composition for soap." The specifications describe it as intended "for cleaning tin, brass, iron, earthenware, woodenware, polishing marble, all metals, etc.," and as consisting "of the ingredients and the proportions hereinafter given, as follows: To one thousand pounds of tallow, and caustic soda sufficient to saponify the tallow, add two hundred and fifty pounds resin, and sufficient lye to saponify the resin, and water enough to make the mass weigh about seven thousand pounds, then add from three and a half to four parts of pulverized quartz to one part of the above mixture, and boil the whole in any suitable kettle or vessel until the proper consistency is had, after which, it should be poured into frames and cut into cakes or bars of any required length when cool." The claim is in the following language: "A soap composed of the ingredients, and in about the proportions given."

The plaintiff charges the defendants with making and vending the above described soap. The defendants deny this, and also assert that the complainant has not manufactured soap according to the process covered by this patent, and that he was not the first inventor of this process. A careful examination of the proofs has satisfied me that the soap made by the defendants, and that covered by the patent are the same, substantially. The defendants, probably, use a greater proportion of resin, and there is some disagreement in the testimony respecting the effects of this. The weight of the evidence, however, is that the quality of the soap is not changed. Mr. Day, called by the defendants, and other witnesses, say it simply increases the bulk, and thereby "cheapens" the article. The sal-soda and borax, added by the defendants, are also unimportant. In the quantities employed, at least, they can have no material effect. It is not improbable, indeed, that these immaterial variations from the plaintiff's process were made in the hope of escaping, thereby, responsibility for infringement. Mr. Cliver had been in the plaintiff's employment, and was familiar with his process. He projected the business

---

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

which the defendants have carried on, and it was his knowledge and experience, doubtless, that induced his co-partners to unite with him in the enterprise. At the outset, if the testimony of Mr. Dutton is true, (and Mr. Cliver did not appear before the commissioner to contradict it) he openly avowed his purpose to produce the same article that the plaintiff manufactured, and when reminded of the patent, and the risk, replied that "he didn't care, he had as good a right to make it as any one else."

As respects the question of priority and prior use, the burden of proof is on the defendants; and, while they have produced evidence bearing on the question, I do not consider it sufficient to overcome the prima facie case presented by the patent, supported, as it is, by the counter evidence furnished by the plaintiff. The plaintiff's process, as respects the use of pulverized quartz, is new. The principal object of the other ingredients is to hold the particles or quartz in a compact mass. Similar soap, omitting the quartz, has been long in use; and sand, pulverized quartz, and other similar substances have been employed in scouring for many years. Soap and sand, and other gritty substances had been combined long before the date of this patent; but the result was not satisfactory, and the need of a better scouring material led many persons to seek for it. Others than the plaintiff were, and for a considerable time had been experimenting in that direction, but it is not proved that any one successfully employed the process and ingredients here involved, in advance of him. The testimony of witnesses in respect to what they saw or did years ago, in describing machinery or other articles of manufacture, must be received with caution. The production of the machine or other articles involved would be much more satisfactory. The failure to produce them is of itself entitled to no little weight in considering the value of such testimony. Experience shows that men are not slow to claim letters-patent for any new and useful thing discovered or invented; and the absence of any such claim here, by others who were experimenting at the same time the plaintiff was, or before, is not without importance in considering the question of priority. A decree will be prepared in the plaintiff's favor.